UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ETHELMARIE D. HUBBARD, | ) |
| Plaintiff, | ) Case No.: C08-1446 CRD |
| v. | ) |
| MICHAEL J. ASTRUE, | ) ORDER RE: SOCIAL SECURITY |
| Commissioner of Social Security, | ) DISABILITY APPEAL |
| Defendant. | ) |

Plaintiff Ms. Hubbard appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-four-year-old woman, forty-six years old at the alleged disability onset date. She has a high school education and has work experience as a general office clerk, a sewing machine seamstress, and a housecleaner.

Plaintiff applied for SSI and DIB, alleging disability since February 1999 due to injury from a wall partition falling on her knee and depression. Her claim was denied initially and upon reconsideration, and she timely requested an ALJ hearing. In December 2004, ALJ Joyner held a

ORDER - 1

hearing and denied Plaintiff's claim in February 2005. Plaintiff filed an appeal in this Court where the parties stipulated to a remand for the ALJ to:

> (1) consider the effects of Plaintiff's obesity in accordance with Social Security Ruling (SSR) 02-1p; (2) further consider the opinions of Gerald Cavenee, M.D., that Plaintiff had marked and moderate mental limitations which were supported by objective testing; (3) further consider the opinions of lay witnesses, Claudette Granaham, M.A., and Elizabeth Motlong, M.S.W., providing germane reasons for the evaluation of their opinions; (4) fully evaluate the opinions of Eric Parsons, M.D., Robert Chinnapongse, M.D., Margaret Porembski, M.D., and Ann Grande, P.T., that limited Plaintiff to sedentary work; (5) reevaluate the opinion of Sara Fleming, M.D., providing legally sufficient and factually consistent reasons for the weight given; (6) further consider Plaintiff's work activity since her alleged onset date to determine if the wages represent substantial gainful activity; and (7) if necessary, consult with a mental health medical expert.

Administrative Record ("AR") 585-86. The Appeals Council remanded the case to the same ALJ "for further proceedings consistent with the order of the court" and specifically noted some of the issues to be considered on remand. AR 589-90.

On January 1, 2007, a second hearing was held before ALJ Joyner. The ALJ heard testimony from a medical expert and from Plaintiff, who was represented by counsel, Anne Kysar, Esq. AR 745-54. The ALJ rendered an unfavorable decision on April 25, 2007. Plaintiff requested Appeals Council review; review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On September 29, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Ms. Hubbard bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 572, Finding

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

2. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of a major depressive disorder and a pain disorder with psychological factors. AR 572, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. Here, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 574, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ in this case found Plaintiff "has the residual functional capacity to [perform] a modified light level of physical exertion," with additional restrictions of "only occasional stair climbing, kneeling, crouching, crawling, stooping, and no climbing of ladders, ropes and scaffolds. Additionally she should not work around hazards or heights. Due to her mental impairments, she is restricted to work activity that has limited contact with the public and a restriction to detailed, but not complex tasks." AR 575, Finding 5.

The ALJ next found that Plaintiff is capable of performing her past relevant work as a general office clerk, a sewing machine seamstress, and a maid/housecleaner. AR 581-82, Finding 6. If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded. In this case, the ALJ consulted a vocational expert and determined that Plaintiff could perform her past relevant work as well as work as a miscellaneous assembler, a hand packager, or an information clerk, and therefore concluded Plaintiff was not disabled as defined in the SSA. AR 583.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in assessing Plaintiff's knee impairment?
2. Did the ALJ err in assessing Plaintiff's obesity?
3. Did the ALJ err in assessing the opinion of an examining psychologist?
4. Did the ALJ err in assessing Plaintiff's credibility?

## VI. DISCUSSION

*A.   The ALJ did not err in assessing Plaintiff's knee impairment at step two.*

Plaintiff asserts that the ALJ erred in not finding her knee injury to be a severe impairment. Defendant argues that the ALJ did not err because there is not sufficient evidence to find the knee injury is a severe impairment, and that even if the ALJ should have found it severe at step two, the omission was harmless because the ALJ went on to consider subsequent steps in the sequential evaluation, and considered the knee limitations in assessing her RFC.[2]

The step two inquiry is meant to exclude the most minor of impairments. It is a screening device used to eliminate cases that do not meet the threshold requirement of severity. *See Bowen*

---

[2] The Court notes that Defendant does not argue the ALJ's reasoning is proper but focuses on the medical record to justify the ALJ's decision. This Court's review is not *de novo* but examines whether the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss*, 427 F.3d at 1214. The Court cannot substitute Defendant's arguments for a presumed rationale of the ALJ's decision. *Ceguerra v. Secretary*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."); *accord Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995).

*v. Yuckert*, 482 U.S. 137, 154 (1987). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*quoting* Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Id*. (*citing Bowen*, 482 U.S. at 153-54).

In the first decision, the ALJ found Plaintiff's chronic left knee pain to be a severe impairment. AR 30. However, in the second decision, the ALJ reiterated much of the same evidence along with new evidence regarding Plaintiff's knee. The ALJ concluded instead, that "based on the lack of evidence to support the existence of a physical impairment, despite her complaints of pain," that "the appropriate diagnosis is a pain disorder with psychological factors," which the ALJ found is a severe impairment. AR 573, 574. The ALJ reasoned that Plaintiff's "medical findings have been normal time and time again" and noted that Drs. Waterman, Chinnapongse, and Cooper did not opine severe limitations because of her knee or other physical complaints. AR 573. The ALJ also found significant that psychologist Dr. Breen concluded, "I believe her disability conviction is extraordinarily high, and at this point, apparently intractable. The note by her treating physician does not suggest difficulties quite as severe as she seems to experience." AR 574 *citing* 644.

Plaintiff argues that the ALJ erroneously rejects or ignores treating and examining doctors' opinions regarding her physical limitations, in particular, Drs. Chinnapongse, Cooper, and Bushnell. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes*, 881 F.2d at 751-55. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted).

### Dr. Chinnapongse

Plaintiff's knee injury occurred in February 1999 when a wall partition fell on her. The ALJ notes that "although Dr. Chinnapongse listed knee pain and trochanteric bursitis as impairments in 2000, he also reported that they were mild with no significant interference with the ability to perform basic work-related activities." AR 573 *citing* AR 292. Plaintiff argues that Dr. Chinnapongse did not make such a finding. Dkt. 9 at 8. The Court disagrees. The exhibit the ALJ cited, 10F (AR 292), shows Dr. Chinnapongse assigned a severity rating of "2" representing a "mild impairment" which indicates on his report, "no significant interference with the ability to perform basic work-related activities." AR 292. As Plaintiff notes, at the same evaluation, Dr. Chinnapongse found limitations due to knee and hip pain, but found her nonetheless capable of sedentary work. AR 293. The Court finds that although the ALJ concludes Plaintiff is capable of modified light work and not just sedentary work, he did not reject Dr. Chinnapongse's opinion. Regardless, the ALJ's reasoning is specific and legitimate and is based on substantial evidence in the record.

### Dr. Cooper

The ALJ notes that nearly one year after Dr. Chinnapongse's opinion, Dr. Cooper, an examining physician, "observed that claimant had a 5/5 motor strength in her upper and lower extremities, intact sensation and symmetrical deep tendon reflexes at 1+" and that Dr. Cooper found Plaintiff able to "lift and carry 20 pounds occasionally and 10 pounds frequently and able to sit without restriction, found a limitation of 4 hours a day in standing/walking, which is a less restrictive conclusion than the residual functional capacity established in this decision." AR 573, 575 *citing* AR 298-301. The Court finds the ALJ does not reject Dr. Cooper's opinion, but relies on it in part in assessing Plaintiff's RFC and concurring that she has the ability to perform light work. The ALJ's reasoning is specific and legitimate and is based on substantial evidence in the record.

### Dr. Bushnell

The ALJ discussed that examining physician Dr. Bushnell concluded that Plaintiff "was able to stand/walk for 6 hours during an 8-hour day and sit for the same length of time…able to

lift and carry 20 pounds occasionally and 10 pounds frequently. However, in interpreting the evidence in a manner most favorable to the claimant, the Administrative Law Judge finds the claimant's 'RFC' contains the restriction to modified light work." AR 576 *citing* AR 653-54. Plaintiff argues the ALJ provided no basis for rejecting Dr. Bushnell's opinion; however, the Court finds it was not rejected but relied upon in assessing her impairments because the ALJ's opinion is approximately as restrictive as the doctor's.

While all three doctors noted some knee pain, they all found minor limitations not severe. As a result, Dr. Chinnapongse found Plaintiff capable of sedentary work; Dr. Cooper found her capable of light work; and Dr. Bushnell found her capable of light work. No doctor found Plaintiff's knee impairment was severe enough to prevent her from working. Regardless, the ALJ found instead that "pain disorder" is a more accurate characterization of Plaintiff's physical complaints, found the pain disorder to be severe at step two, and appropriately considered it in assessing Plaintiff's RFC. The Court therefore finds the ALJ's conclusion that the medical opinion evidence from Drs. Chinnapongse, Cooper, and Bushnell supports finding Plaintiff's knee injury is not a severe impairment, is based on specific and legitimate reasons supported by substantial evidence in the record. As such, the ALJ did not err in this regard.

   B.  *The ALJ did not err in assessing Plaintiff's obesity.*

Plaintiff argues that the ALJ erred in not finding her obesity a severe impairment. Plaintiff points to the opinions of Drs. Chinnapongse, Cooper, Parsons, Waterman, and Judge, and Physician's Assistant Alessandroni, all of whom at least noted she is obese, while Drs. Chinnapongse and Parsons also found she was capable of only sedentary work, due in part to obesity. Dkt. 9 at 11.

Plaintiff alleges the ALJ "did not address the multiple doctors who commented on Ms. Hubbard's obesity and indicated that it affects her functioning," and that "the ALJ did not consider Ms. Hubbard's obesity at any stage in the analysis." Dkt. 11 at 4. The Court does not agree with Plaintiff's assertion; the ALJ discussed the obesity issue as follows:

> The claimant has been diagnosed as obese. As early as September 1999, Robert Parker, Ph.D., referred to the claimant as "overweight." As early as 1999, the claimant's weight was recorded at 204 pounds. In January 2000, Sara Waterman,

> M.D., described the claimant as obese. By March of that year, her weight had gone up to 211 pounds and a month later her weight was 213 pounds. Karen Judge, M.D., declared in a letter dated October 30, 2001 that the claimant was "morbidly obese". Five years later, one medical report state the claimant, who stood 60 inches tall, weighted 260 pounds. At the hearing in January 2007, the claimant reported her weight was at 218 pounds.
> However, the diagnosis of obesity has not been linked to limitations in the claimant's ability to perform work-related activities. Accordingly, the claimant has not established that her obesity is a severe impairment.

AR 574. Thus, contrary to Plaintiff's assertions, the ALJ did not fail to discuss obesity; it is assessed at step two of the sequential evaluation and found not severe. The ALJ also did not fail to address the physicians who noted obesity; the ALJ discussed the opinions of the doctors and that she had been diagnosed as obese. No doctors found Plaintiff unable to work due to the obesity diagnosis. Two doctors found her limited to sedentary work in part due to obesity. Based on the range of medical opinions and medical evidence in the record, the ALJ found Plaintiff capable of a limited scope of light work. The Court therefore finds the ALJ's decision is based on substantial evidence in the record and not in error.

*C. The ALJ did not err in assessing an examining psychologist's opinions.*

Plaintiff argues that the ALJ erred in assessing the findings of Dr. Breen, an examining psychologist, because the ALJ did not give reasons for rejecting Dr. Breen's opinions and did not incorporate them into her RFC. Dr. Breen assessed Plaintiff to have major depression, a pain syndrome, and a Global Assessment Functioning ("GAF") score of 45, resulting in moderate limitations in interacting appropriately with supervisors, coworkers, and responding appropriately to changes in a work setting. AR 643-48. The ALJ discussed Dr. Breen's findings regarding Plaintiff's depression, including that she had few physiological signs of depression, but found that, "[n]evertheless, as the claimant's depression has imposed restrictions in her ability to perform work-related activities, the Administrative Law Judge finds that [depression] is a severe impairment." AR 573. As discussed above, the ALJ also found the pain disorder to be a severe impairment; thus, the ALJ concurred with Dr. Breen's opinions at step two in finding major depression and pain disorder to be severe impairments. AR 575.

The ALJ does not explicitly discuss whether he agrees with Dr. Breen's assignment of a GAF score of 45. However, the ALJ notes that, "[a]ccording to the evaluation conducted by

Alan Breen, Ph.D., in October 2006, the claimant attributed all of her problems to the 1999 knee injury and she continued to believe that she was unable to work. Her PAI clinical profile was unusual, leading to the conclusion that the claimant would be unreceptive to '...examining psychological factors associated with her physical complaints and she will probably be resistant to psychological interventions.'" AR 574 (citations to ALJ record omitted). The ALJ also found significant that Dr. Breen concluded: "I believe her disability conviction is extraordinarily high, and at this point, apparently intractable. The note by her treating physician does not suggest difficulties quite as severe as she seems to experience." AR 644. The ALJ noted that Dr. Reade reported in December 1999 that Plaintiff did not have any restrictions in nine different work-related areas and only mild limitations in the area of tolerating the pressures and expectations of a normal work setting (AR 577 *citing* AR 238). The ALJ also noted that in February 2001, Dr. Johnston found she was logical and linear in her thought process with no difficulty following instructions and assessed a GAF of 60 (AR 578 *citing* AR 294-97). Furthermore, the ALJ noted that in May 2002 Dr. Suh assigned a GAF of 65 to 70. AR 578 citing AR 351-53. In assessing Plaintiff's RFC, the ALJ concluded that due to Plaintiff's mental limitations, she is restricted to work with limited public contact and no complex tasks. AR 575. The Court therefore finds the ALJ's assessment of Dr. Breen's opinion and Plaintiff's RFC is based on substantial evidence in the record and is therefore not in error.

### D. *The ALJ did not err in assessing Plaintiff's credibility.*

Plaintiff asserts that the ALJ improperly assessed her credibility because he did not provide sufficient reasons for rejecting her testimony concerning the severity of her symptoms and limitations. Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59. In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so

that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ discussed in lengthy detail Plaintiff's credibility, assessing her claimed mental and physical limitations and whether they are supported by objective medical evidence, doctors' opinions, treatment, and her daily activities. AR 576-79. The ALJ incorporated Plaintiff's credibility analysis from his first decision and again did not find any evidence of malingering by Plaintiff, but concluded that her activities of daily living do not support her allegations of disability, and that the objective evidence in the record does not support the intensity of the symptoms she claims. The ALJ gave Plaintiff's testimony reduced weight because objective medical findings were not consistent with the degree of impairment alleged, including Dr. Reade's opinion that her symptoms would result in only mild limitations, Dr. Johnson's opinion that she has a GAF of 60, and a later GAF score of 65 to 70. Regarding her physical complaints, the ALJ noted Dr. Parker's, Dr. Johnston's, and Dr. Bushnell's examinations, which indicated generally normal results. AR 578. The ALJ also found Plaintiff's complaints are undercut by her vagueness in reporting her symptoms to Dr. Suh in 2002 and that her normal activities of daily living are inconsistent with her allegations of disability, including that she reported walking six blocks a day and that she drives a car. The ALJ also noted that her "rather normal levels of functioning were achieved with only minor medical intervention." AR 579.

The ALJ presents clear and convincing reasoning with respect to Plaintiff's physical complaints; many of Plaintiff's reported complaints are simply not supported by evidence in her medical records. The Court therefore finds the ALJ determined, based on substantial evidence in the record, that Plaintiff's subjective allegations regarding her complaints may be less severe than she alleges. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's

credibility determinations are entitled to "great deference"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (stating that ALJ's role is to judge credibility of claimant).

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case is DISMISSED.

DATED this 16th day of March, 2009.

                                                  Carolyn R. Dimmick
                                                United States District Judge